# Thomas R. Harris
## v.
# Granville Atchinson.

Promissory Note—Signing as security—Agreement to procure another signer.—Appellee claimed that he signed the note in question as security, with the understanding that another security should be procured, which was never done, and upon the evidence on this point a judgment was rendered for appellee in the court below. The evidence fails to support the theory of appellee's defense, while appellant's position is clearly supported. The finding of the court being against the weight of the evidence, the judgment must be set aside.

Appeal from the County Court of Morgan county; the Hon. E. P. Kirby, Judge, presiding.

Messrs. Morrison, Whitlock & Lippincott, for appellant; that forbearance to sue on a doubtful demand is a good consideration for a promise to pay, cited Mulholland v. Bartlett, 74 Ill. 58; Knotts v. Preble, 50 Ill. 226; 1 Chit. Pl. 101.

The proof must correspond with the allegation: Wheeler v. Reid, 36 Ill. 81; Murray v. Hanely, 70 Ill. 318.

The consideration must be proved as laid: R. & W. R. W. Co. v. Rhodes, 76 Ill. 285.

Messrs. Dummer, Brown & Russell, for appellee; that in pleading, a material statement not traversed is taken to be admitted, cited 1 Chit. Pl. 658.

A note signed upon condition that another signer shall be procured before delivery, is without consideration if the other signer is not procured: Knight v. Hurlbut, 74 Ill. 133; Stricklin v. Cunningham, 58 Ill. 293.

Lacey, J.   This suit was brought by appellant against appellee and J. W. Caldwell and W. W. Deatherage, to recover on a certain promissory note signed by appellee as security for the other two defendants, for $791.66, dated October 19, 1875, and due one year from date, with ten per cent. interest per annum.

The defense set up by the appellee to said note was by his first plea, that the note was without consideration in this: that after the note was signed by his co-defendonts it was promised and agreed by and between them that if the appellee would sign the note as security for his co-defendants, they would procure some other person pecuniarily responsible other than appellee to sign the said note as security before it should be delivered by appellant as a binding obligation on appellee, which promise and agreement was the sole consideration upon which the said note was signed by appellee; that the appellee did sign the said note as security for his co-defendants, of all which the appellant had notice; that without the consent of appellee the note was delivered to appellant without the signature of the promised security, etc.

The 2nd and 3d pleas set up the same defense substantially, averring, however, that the note was deposited by appellant, or by his consent was deposited in the hands of J. E. Barrett, for the signature of the other security, and that without the consent of appellee the note was delivered to appellant without the signature of the other security, etc.

Issue was taken on all the allegations of these pleas except the allegation that appellant had notice of the above agreement, which latter allegation by issue not being joined must be taken as confessed. Default was entered, and judgment rendered against the principals on the note, and jury waived and trial had by the court as to appellee. The court found for appellee, and as to him rendered judgment against appellant for costs, who brings the case to this court on appeal, and assigns for error the refusal of the court below to render judgment against appellee for the amount of the note and the giving judgment against appellant for costs.

The undisputed facts, as appears by all the evidence in the case are, that appellant prior to the time the note in suit was executed, held a note of $2,000 signed by Caldwell and Deatherage, the co-defendants, with appellee as principals and appellant as security. That the first note was given up and canceled, and at the came time Deatherage proposed to and did pay appellant $1,500 in cash, and agreed to give a new note with

Harris v. Atchinson.

some names on it for the balance of the first note. The question whether any other person should sign the note as security, and whether such note should be operative unless such party did sign it, is disputed.

Appellant went to Jacksonville, and with Caldwell went to his attorneys' office to get the old note, when Caldwell and his attorneys calculated the amount of the old note and interest, and after taking out the $1,500 payment, the note in suit was drawn up and Caldwell signed it. Appellant then took the note back to Waverly, where he lived, and went with it to Deatherage's house, presented it to him, and Mr. D. paid him $1,500 in cash. Appellant then handed him both notes; he said he would get appellee to sign the note. The note was to be returned signed. About an hour afterwards Mr. D. met appellant on the sidewalk and handed him the note in suit as it now appears. The note was then deposited by consent of appellant with one Barrett at his store for another signature, where it laid for about two months and no signature was procured, when appellant called for the note and took it up.

It is contended by appellee that it was expressly agreed by him and his co-defendants, and that was the sole consideration of his signing the note, that before the new note should be delivered another good security snould be obtained on the note, and it is admitted by the pleadings that appellant had notice of whatever agreement was made. The appellant contends that he was satisfied with the security, and only left the note in Barrett's hands for additional signatures, at the request of Deatherage and for the accommodation of appellee, and that the procuring of the other signature was not to be a condition precedent to the delivery of the note. What is the evidence on this point? Deatherage swears that he told appellant that he would give him two sureties; thinks he told him he would get appellee to sign the note, but was not certain; that as there had been some talk about their credit, he would not ask any one man to sign their note alone. He also testifies that he told appellee they were not in as good credit as they had been, and he got appellee to sign the note, and told him that he would get another good solvent man to sign the note before it should be

delivered; and that appellee signed the note with that under-standing. That the old note was paid in this way, and appellee released.

Appellee testified that Deatherage presented him this note and asked him to sign it; he told him that if he would sign it he would get another good solvent man to sign it before it was delivered—with that understanding he signed it—this was the consideration on which he signed the note. That he was willing to the agreement to renew the old note, but Deatherage told him he would get another solvent man to sign it.

Caldwell testified that the old note was canceled and surren-dered in consideration of the $1,500, and the execution of the new note. This was all the evidence going to sustain appel-lee's pleas. Appellant testified that he only left the note with Barrett after it had been signed and delivered to him for the additional signature, at request of Deatherage. He had no conversation with appellee about it. That in August, 1877, in company with Frank Mecham, he asked appellee for payment of the note in suit. He said he would see his co-defendants about it. He made no claim that he was released. For the first time after this suit was commenced, appellant heard he was going to claim that another man was going to sign it. Appellant was satisfied with the signatures. Mecham testified that at the interview with appellee spoken of, the latter did not claim to have any defense to the note, but said "it seems like they intend to let me pay it." This is substantially all the evi-dence.

From all the facts and circumstances in evidence in this case, it seems to us clear the story told by appellant is the correct one; that really the agreement and understanding between the parties, was that the new note should be given for the balance of the old note; that the same parties should sign it, but for the accommodation of appellee, he being the sole security on the old note, and the principals being in failing circumstances, since having become insolvent, another security might be obtained by Deatherage, if he could get one, for the accommo-dation of appellee alone to share the responsibility and risk with him, and not as a condition precedent to his liability.

To hold otherwise from all the evidence in the case, would be to believe that appellant, knowing the reputation of the principals in the note was not as good as it had been, deliberately canceled the old note, and delivered it up and released appellee; then placed the new note, signed as it was, in the hands of a third party, with the agreement that it should never take effect as to appellee, unless Deatherage, who would have no interest in doing so, would procure another security. According to this theory, the appellant being chargeable with full knowledge of the agreement, deliberately released his security, for it could make no difference to Deatherage and Caldwell whether the additional security were obtained or not. If it was not obtained, appellee was released; if obtained, then he was responsible. The happening of the event, whether appellant should have any security, or should even retain the security he then had, was wholly in the breast of Deatherage. Such a transaction would be contrary to all our experience of human nature. We could not believe such a theory without the clearest proof.

On the other hand the theory of the appellant accords with reason. Before the old note was canceled the appellee was already liable for this debt; he could only be released at the will of appellant; he was placing himself in no worse position by signing the new note unconditionally than he was in before—in fact better, because $1,500 had been paid of the first obligation.

We think the position of the appellant in this case is clearly supported by the evidence, and that the finding of the court below was so manifestly against the weight of the evidence that the judgment of the court below ought to be reversed and the case remanded, which is accordingly done.

Reversed and remanded.